## No. 521

### First Circuit

## BROWNING v. MAESTRI

(December 3, 1929.  Opinion and Decree.)

R. F. Walker and J. D. Womack, of Baton Rouge, attorneys for plaintiff, appellant.

Cross & Moyse, of Baton Rouge, attorneys for defendant, appellee.

MOUTON, J. North Boulevard is a street in the city of Baton Rouge running east and west, which is intersected by Twelfth Street, running north and south, and which ends with its intersection of North Boulevard.

On March 31, 1926, a collision occurred at the intersection of these two streets between a Buick sedan, which was being driven by Richard Maestri and a Ford car, driven by Floyd Browning, minor son of Frank Browning. Merrit Browning, an occupant of the Ford car, the son of Frank Browning, aged three years, was severely injured in the collision. His father, Frank Browning, brings this suit against Richard Maestri, claiming $11,000 in damages with legal interest from judicial demand, which was rejected below.  Plaintiff appeals.

Mrs. G. B. Rentin says she saw the collision between the two autos. She was, according to her testimony, sitting at the time in her car which was parked on the south side of North Boulevard, practically south of the corner of Twelfth Street, where it connects with North Boulevard. She says she saw Maestri coming south-

ward on Twelfth Street towards North Boulevard, and that he was traveling on the east side of Twelfth Street. She does not say that he was going at an excessive rate of speed, but that he was moving at a lively speed. Her testimony is, that on reaching the eastern corner of Twelfth Street where it connects with North Boulevard, that he abruptly turned to the east into North Boulevard, and a few feet along the north side of that street, ran into the Ford car which Floyd Browning was driving. According to her testimony, Floyd Browning was attempting to park his car, which was hardly moving at the time. If Maestri blew his horn she did not hear it.

Michael, Angrum and Williams, witnesses for plaintiff, say they saw the collision. They were all three, according to their testimony, not far from the corner of Twelfth Street, and in close proximity to where the accident happened. They say, in substance, that Maestri came down Twelfth Street and at its eastern corner did not stop there but suddenly turned around or swung his auto, as one puts it, and ran into the Ford Floyd Browning was driving along his right side, or the north side of North Boulevard. They all say that Browning was on the point of parking his car on the north side of North Boulevard, at the time and which was moving slowly, if at all, as one or two testify.

These witnesses say also that if Maestri blew his horn they did not hear it. It is shown by a city ordinance of Baton Rouge introduced in the case, that Floyd Browning had the right of way on North Boulevard. It also appears, according to the testimony of these witnesses, that he was driving on the north side of North Boulevard or to his right side when the collision occurred.

If the district judge had believed these witnesses, undoubtedly he would have rendered judgment against Maestri, defendant. Maestri, however, gave a version of the occurrence quite different, and at variance with the testimony of the witnesses above referred to.

Maestri says he came down Twelfth Street driving about the middle of that street; that when he reached Boulevard he stopped his auto, blew his horn, "put his car" in first gear, and that when he got about the center of North Boulevard, Browning ran into his auto, hitting the left front door of his car, the running board and denting his left front and rear fenders.

T. C. Bourgeois, as far as the record discloses, a disinterested witness, did not see the collision, but on his way home stopped his car where it had occurred. He says Maestri's car was standing diagonally across the car rails which were yet on North Boulevard at that time; that the car track was in the middle of North Boulevard and that the front wheels of Maestri's car were across the south rail, and the rear wheels were across the north rail. The Maestri car was, therefore, according to Bourgeois, in the center of North Boulevard, after the wreck. Bourgeois says he examined the Maestri car, and corroborates Maestri's testimony in reference to the injury or damages to his car.

Two or three mechanics who had worked on Maestri's car after the collision testified to the damaged condition of the car to its left door, running board, fenders (front and rear), and all in line with the injuries as described by Maestri and Bourgeois.

It was shown that the left door of the Maestri car, a Buick, was of metal. Mar-

chand, one of the mechanics, says that there was an imprint of a headlight on the door, in a circular form. This statement is confirmed by the testimony of A. B. Avery, another mechanic, who is engaged in the business of auto sheet metal work. P. J. LeBlanc, an automobile mechanic, also testified to the circular imprint of a *headlight on the left door of the Maestri* car. He said the door had been dented by the effect of the imprint, and had to be hammered out and filed to get the rough dents out. According to his testimony the blow to the Maestri car must have been severe. He was then asked on cross-examination if he thought that such a blow could have been given by the headlight of a Ford auto without breaking the glass in the headlight. His answer was that a very straight lick would not have broken the glass; "it is possible he says, it would not have." This question was propounded, we presume, on cross-examination because plaintiff's witnesses testified that the headlight of the Ford *had not been broken by the collision.* Even if it was not broken the testimony of Le-Blanc shows that such could have been the case, though the imprint of the headlight had remained distinctly marked on the door of the Buick.

Obviously, the district judge accepted as correct the account of the occurrence as it was given by Maestri, corroborated as it is by the testimony of Bourgeois, and by the physical facts of the case which indicate that the Buick was run into by the Ford driven, at the time, by a boy of 13, who, very probably lost control of his car, as it also appeared that water was leaking from the radiator of his car immediately after the collision.

The judgment was grounded on pure questions of fact, and the credibility of the witnesses.

After a careful consideration of the evidence, we have been unable to find that there is any manifest error in the finding of the trial judge. Such being the situation, under the well settled rules of law, there is no legal ground to authorize or justify a reversal by this court.